

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00373-CV

## IN THE INTEREST OF K.R. AND G.R., CHILDREN

On Appeal from the County Court at Law
Moore County, Texas
Trial Court No. CL67-20, Honorable Jerod Pingelton, Presiding

February 28, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, K.M.R. (Father), appeals from the trial court's final order of October 6, 2023, that terminates his parental rights to his children, K.R. and G.R.[1]  The court based its decision on the authority of statutory predicate ground (N) (constructive abandonment) and the finding that termination was in the children's best interest.[2]  Appellee is the Texas Department of Family and Protective Services.  Through a single issue, Father challenges the sufficiency of the evidence supporting the trial court's finding that termination of the

---

[1] To protect the privacy of the children, we refer to Appellant as "Father," the children by initials, and the children's mother as "Mother."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8 (a),(b).

[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N) and (2).

parent-child relationship is in the children's best interest. Concluding that sufficient evidence supports the challenged finding, we affirm the judgment of the trial court.

## Background

K.R. and G.R. were removed from Mother[3] in May 2020 and placed in Department foster care in the Amarillo area, where they remained at the time of the final hearing. Mother's parental rights were terminated by order signed November 29, 2021. Father's rights were not terminated at that time; he was named a possessory conservator with an expectation of establishing a relationship with the children and working toward reunification. To do so, Father was required to undertake several responsibilities. The Department subsequently moved to terminate Father's rights, alleging there had been a material and substantial change of circumstances since November 2021.

At the final hearing, permanency specialist and caseworker Michele Slagle pointed to a plan of services and communication requirements that Father had to fulfill before reunification would be possible. These included Father's attendance and participation in face-to-face therapy sessions to assist establishing a bond with the children. Father attended only a single session. During that session, K.R. challenged Father's reasons for seeking reunification, asking, "Why do you want to be a part of our life when you weren't before?" Father offered as an excuse owning a 1999 Chevrolet Tahoe and a 1995 Dodge Ram pickup for why he was incapable of traveling from his home in Weatherford, Texas, to Amarillo to participate in the other sessions.

---

[3] Father testified that he and Mother were not married.

2

Evidence shows Father has only had two other in-person visits with the children since November 2021. One was at a restaurant located in Wichita Falls (after a volunteer drove the children to the meeting location), and the other visit was in Amarillo at a "game place where the trampoline and the movie theater and the arcade are all close together." Father initially explained that feeling intimidated by Mother's family kept him away, but ultimately conceded, "I didn't come like I should have. More my fault than intimidation."

Regarding electronic communications, Father estimated he missed about one-fourth of allowable telephone calls with the children; he reasoned he thought they either needed a break or that the foster parents were "out of pocket." According to Department records, Father actually missed 37 of 60 possible phone calls. And during the calls he did participate in, Father apparently only spoke with G.R.

Father testified he did not want his parental rights relinquished because he desires his children to know him personally. But when asked what he had done to foster a relationship with the children since 2020, Father admitted, "[p]robably not much." He testified that since the children's removal, he had not sent them gifts for birthdays or Christmas. According to Slagle, "the [children] are very frightened to be around" Father and have not bonded with him. Slagle testified that the children have expressed a desire to be adopted by their foster parents. Father acknowledged the foster parents' desire to adopt K.R. and G.R. and that the children are happy and well cared for in the foster home. When asked for a reason why the court should not immediately terminate his parental rights Father responded:

> None. They're happy where they are. [The foster parents] are great
> parents. I just would like to stay involved somehow, get caught up on my

3

child support, and build a bond with [the foster parents] and the [children] to where they know they don't have to pick and choose. They got several people that love them. It's all about them.

Father testified he is a self-employed painter. He reported an annual income of $16,000 for 2022, an amount he attributed to the COVID-19 pandemic. Father estimated a similar income for 2023.[4] Father explained he was eligible for assistance with bills for food and medical care. He recently received food stamps of $290 to last 90 days. Father estimated that with receiving housing assistance his monthly expenses were about $1,800. Father testified he moved from a mobile home into a two-bedroom house so that the children could "visit" over a weekend.[5] He was apparently able to make this housing change through an assistance program that covers his rent while he pays for utilities. Father acknowledged owing approximately $2,000 in court-ordered child support; he attributes the arrearage to a financial and medical hardship. He has never investigated obtaining health insurance for the children because he "never anticipated reunification."

---

[4] Father acknowledged his income can be erratic, but explained his choice of employment over a wage job in the following manner:

> [W]ith my work, it just goes up and down like that, but if you go get a punch clock job, right when you do, one of the paint jobs calls in and you can make in two weeks what it takes you two months at that punch clock job, so you're better just to pray and not give up so quick.

[5] He answered a question about his motivation for the two-bedroom home this way:

> Q. And you primarily got the two bedrooms so your [children] could visit?

> A. Visit, exactly. Once a bond was established and [the foster parents], everybody felt, you know -- just say, "Hey, can – y'all want to come for a weekend and just kind of spend it together?" And [the foster parents] are there. A big enough house where everybody could just have a barbecue like at -- if we have one at their house.

4

Father acknowledged receiving and completing a two-year probated sentence following a 2015 conviction for driving while intoxicated, as well as a recent arrest for DWI after consuming a half liter of vodka. According to a police report, the current DWI charge stemmed from a traffic stop for speeding. However, the officer found Father clothed only in a pair of shorts, worn backward. The officer noted "a superficial abrasion" on Father's forehead. Father told the officer the head wound came from hitting his head against a wall out of "anger and depression." Father testified of the upcoming DWI hearing and expected his driver's license to be suspended. Before his DWI arrest, he had been successfully discharged from a 35-day alcohol rehab program in Houston. However, Father was unable to answer why he did not attend Alcoholics Anonymous meetings other than when he was in rehab.

## Analysis

Father does not challenge the sufficiency of the evidence supporting the acts or omissions enumerated under section 161.001(b)(1) of the Texas Family Code that can serve as a basis for terminating parental rights. Father instead argues the evidence is insufficient to support the trial court's finding that termination of his rights was in the best interest of K.R. and G.R. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). The applicable standards for reviewing the evidence of the child's best interest are discussed in our opinion in *In re I.O.*, 645 S.W.3d 895, 904 (Tex. App.—Amarillo 2022, no pet.), and need no further elaboration here. The trial court, as factfinder, was the sole judge of the weight and credibility of the evidence and was entitled to believe all, some, or none of a witness's testimony. *In re A.M.,* No. 07-21-00052-CV, 2021 Tex. App. LEXIS 5447, at *11 (Tex. App.—Amarillo July 8, 2021, pet. denied) (mem. op.).

5

Although neither child testified at final hearing, the admitted evidence is undisputed that both children desire to be adopted by their foster parents. While Father showed nominal interest in maintaining a relationship with his children, his plan for building a daily life together remains amorphous and demonstrates a lack of initiative. The Department provided Father with opportunities to work toward reunification. However, the evidence was more than sufficient to lead a rational factfinder to find that Father prefers to stay in his current situation, passively hoping to cultivate a relationship with his children based on approval of the foster parents. Such an arrangement—where the children spend only a small amount of time with Father until he decides he is ready for a full-time role—would force the children to persist in an environment of uncertainty of foster care with no possibility of adoption.

In addition, the evidence militates against Father's ability to provide a safe, stable, and permanent environment for the children. This includes testimony regarding his unreliable employment, struggles with alcohol abuse, and a pending criminal charge, ambiguous statements about his future plans, and his inability to explain why the physical distance between Weatherford and Amarillo poses such an insurmountable barrier to fulfilling his parental responsibilities. When we look at "best interest," our focus is on the interests of the child, not the parent. *In re S.B.,* 597 S.W.3d 571, 585 (Tex. App.—Amarillo 2020, pet. denied). Here, the children are succeeding in foster care with the prospect of adoption following termination. Father's satisfaction with the status quo may be his preference, but it is not the preference of his children.

We conclude that legally and factually sufficient evidence supports the trial court's best interest finding. We overrule Father's sole issue on appeal.

6

**Conclusion**

We affirm the judgment of the trial court.


Lawrence M. Doss
Justice